## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

PAGGIWA CUMMINGS, individually and
on behalf of all others similarly situated,

      Plaintiff,

 ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY, an Illinois
Corporation

      Defendant.

Civil Action No.: 3:22-cv-00247-JWD-EWD.

Judge: John W. Degravelles

Magistrate Judge: Erin Wilder-Doomes

---

### PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Plaintiff, Paggiwa Cummings ("Plaintiff"), individually and on behalf of all other similarly situated, files her Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class, and respectfully requests that the Court grant preliminary approval of the proposed class action Settlement Agreement ("Agreement"), attached hereto as **Exhibit 1**,[1] between Plaintiff and Defendant Allstate Property & Casualty Insurance Company ("Allstate" or "Defendant").

### I.      FACTS AND BACKGROUND

This is a Louisiana class action lawsuit on behalf of Allstate insureds who submitted covered first-party auto total-loss claims during the class period. Doc. 1, Complaint ("Compl."), at ¶¶ 5-6, 25-26, 64, 72-78. Plaintiff alleges that vehicle sales taxes, title fees, registration fees, and applicable transfer fees (*i.e.*, title, handling, plate) must be paid in connection with a total loss settlement because, *inter alia*, it is inherently included within the actual cash value ("ACV") of the vehicle. *Id.* at ¶¶ 5, 9-20, 79-81. Plaintiff alleges that Allstate failed to pay some or all of these

---

[1] For purposes of this memorandum, capitalized terms have the meanings provided in the Agreement.

fees in connection with total loss valuations and payments in the State of Louisiana. *Id*. at ¶¶ 6, 58, 9-11, 72-82.

### A.    Plaintiff's Total Loss Claim and Allstate's Alleged Breach.

Plaintiff and Settlement Class Members entered into Louisiana automobile policy agreements to be insured by Allstate under terms contained in "form" policies (the "Policy" or "Policies"). Compl. at ¶¶ 5, 26, 45; *see* Declaration of Adam Schwartzbaum ("Schwartzbaum Decl.") at ¶ 4, attached as **Exhibit 2**. Allstate's Policy covered Plaintiff and Settlement Class Members based on what Plaintiff alleges to be standardized language with identical material terms for collision and comprehensive coverage on first-party total loss physical damage claims. *Compl.*. at ¶¶ 26, 28.

Plaintiff alleges that the Policy requires Allstate to pay the ACV, including reasonably necessary costs of sales tax ("Sales Tax"), title fees, including title transfer and handling fees, and license plate transfer fees ("Transfer Fees") on total loss claims. *Id.* ¶¶ 27, 30. ACV is (1) defined as "the cost to buy another vehicle[,]" and (2) equal to the "replacement cost value less depreciation." *Id.* at ¶ 8. Plaintiff alleges the Policy contains no provision setting out a difference in coverage based on (1) whether a total loss vehicle is replaced after the total loss, or (2) whether a total loss vehicle is leased, owned, or financed. *Id.* ¶ at 34. Moreover, the Policy imposes no condition that an insured replace a total-loss vehicle to receive full coverage under the Policy. *Id.* at ¶ 34. The Policy requires that Sales Tax and Transfer Fees are owed as part of ACV regardless of whether or not the insured retains the salvage vehicle. *Id*. at ¶ 29.

The policy incorporates the mandates of Louisiana Law. *Id.* ¶ at 34. Plaintiff alleges that, pursuant to Louisiana law: (1) an insured is required to pay Sales Tax and Transfer Fees when

replacing a car to obtain new ownership and operate a vehicle; [2] and (2) Allstate is required to pay Sales Tax and Transfer Fees on total loss claims. *Id*. at ¶¶ 9-23, 42.

Plaintiff and Settlement Class Members made a claim under their Policy and suffered total losses of their Allstate insured vehicles. *Id*. at ¶¶ 72-77. Plaintiff alleges it and each Settlement Class Member were underpaid the full ACV replacement costs, including the Sales Tax and Transfer Fees owed under the Policy on their first-party total loss claims. *Id*. at ¶¶ 55, 79, 81.

### B. Procedural Background.

On April 14, 2022, Plaintiff filed a putative class action Complaint in the Middle District of Louisiana against Allstate, alleging Allstate failed to pay Plaintiff and the Settlement Class Members the full ACV replacement costs, including Sales Tax, Title Fees, Handling Fees and Tag Fees in violation of the Policy and Louisiana Law. Doc. 1. On June 17, 2022, Allstate sought dismissal of all claims (Doc. 11), which Plaintiff opposed on July 2, 2022 (Doc. 17).

During the discovery period, Plaintiff propounded extensive discovery requests, including interrogatories and requests for production. Plaintiff ultimately secured and analyzed thousands of documents, including spreadsheets containing thousands of data inputs. Schwartzbaum Decl. at ¶ 14. The document review and data analysis were particularly time-sensitive, meticulous and complex. Schwartzbaum Decl. at ¶ 10.

---

[2]     There is a 4.45% State motor vehicle sales tax that applies to private passenger motor vehicles whether leased or owned. Doc. 1., ¶ 10. In addition to the State sales tax, most parishes and many municipalities have a mandatory local sales tax ranging from 1.85 percent to 7 percent. *Id*. at ¶ 11.  Registration and tag fees include: (1) $3.00 for private passenger vehicle license plate transfer fee; (2) $20.00 minimum for an annual License fee for private passenger vehicles; (3) $3.00 for private passenger truck license plate transfer fee. *Id*. at ¶¶ 18-20. Title fees include: (1) $68.50 for tag title fee; and (2) $8.00 for title transfer handling fee. *Id*. at ¶ 20.

Ultimately, this Court denied Allstate's request for dismissal. Doc. 44. Subsequently, the parties entered into settlement discussions.  On December 8, 2023, the Parties attended formal mediation with Mike Ungar, a well-respected and experienced mediator. *See* Declaration of Mike Ungar ("Ungar Decl.") ¶ __, attached as **Exhibit 3.** There, the parties agreed to the material terms of a settlement. The parties now agree to settle this Action in its entirety, and intend for the Agreement to bind Plaintiff, Defendant and all Settlement Class Members.

### C.  Terms of the Settlement

The Agreement provides that Allstate shall pay Settlement Class Members (1) the ACV Sales Tax for Settlement Class Members either at the applicable local rate based on the garage location and date of loss or the average sales tax rate for the state, whichever is administratively feasible and which must be applied uniformly for each policy period, (2) all applicable Transfer Fees (*i.e.*, title, handling, plate), less any prior payments for Sales Tax and Transfer Fees. Agreement at ¶ 67; Schwartzbaum Decl. at ¶ 15. This represents 100% of the taxes and title and tag fees sought in this Action. Schwartzbaum Decl. at ¶ 14.  Moreover, Allstate agrees to pay: (1) all settlement claims administration costs; (2) all court-awarded attorneys' fees and costs up to $1,150,000.00; and (3) any Court-awarded Service Award of $5,000.00 for the named Plaintiffs. Agreement at ¶ 79.

The Agreement also provides significant future non-monetary relief for insureds—as part of the settlement, Allstate agrees to pay "applicable Sales Tax and Transfer Fees on total loss vehicles at the time of loss based on the ACV of the vehicle, without requiring the policyholder to provide proof that the policyholder purchased a replacement vehicle and without regard to whether the vehicle is leased or owned." *Id.* at ¶ 80. Allstate also agrees to pay applicable Sales Tax and

Transfer Fees on total loss vehicles without regard to whether the insured retains the salvage vehicle.

In return, Settlement Class Members agree to release claims *only* for non-payment of ACV Sales Tax and Transfer Fees as part of total loss claim settlements. *Id.* at 24. Settlement Class Members do not release any claim for any other type of claim for vehicle valuation or any other type of claim underpayment.

## II. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.

In deciding whether to grant preliminary approval, courts must examine whether the class certification requirements of Fed. R. Civ. P. 23 are satisfied for settlement purposes. *See In re Chinese-Manufactured Drywall Products Liab. Litig.*, 424 F. Supp. 3d 456, 482 (E.D. La. 2020) (certifying settlement class and approving settlement agreement). These include numerosity, commonality, typicality and adequacy. *See* Fed. R. Civ. P. 23(a). If the foregoing criteria are satisfied, for a class seeking money damages, the Court must then consider the following certification requirements: (1) predominance—"that questions of law or fact common to the members of the class predominate over any questions affecting only individual members"; and (2) superiority—"that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *See In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 482.

In applying the criteria for certification of a class action, "the court does not have the authority to conduct a preliminary inquiry into the merits of the case, and hence the substantive allegations contained in the complaint are accepted as true." *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 419 (S.D. Tex. 1999).

The proposed Settlement Class is defined as:

All Insureds, under any Louisiana automobile insurance policy issued by ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, and ALLSTATE INDEMNITY COMPANY and their subsidiaries or related insurance companies with the same operative policy language covering a vehicle with auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the relevant time period and who are mailed class notice and do not timely opt out from the settlement class.

Excluded from the Settlement Class are (1) Allstate, its agents, employees, subsidiaries, parents, and related entities,  all present or former officers and/or directors of Allstate, the Settlement Administrator, the Mediator, Class Counsel, and any Judge of this Court and the Judge's staff and employees; (2) Individuals with claims for which Allstate received a valid and executed release; (3) Individuals who are not on the Notice list and who did not submit a valid Claim Form or Electronic Claim Form for payment under this Settlement Agreement; (4) Individuals who request exclusion from the Class; and (5) Individuals with claims for first-party property damage as to which the individual process of appraisal or arbitration or a lawsuit has been completed or initiated at the time this Settlement Agreement is filed.

Here, each of the requirements for certification of the proposed Settlement Class under Fed. R. Civ. P. 23 are satisfied for settlement purposes. Indeed, many federal and state courts have certified very similar classes based on the exact same certification criteria as is applicable in this Court, including: *Angell v. GEICO Advantage Ins. Co.*, 573 F. Supp. 3d 1151 (S.D. Tex. 2021), *aff'd*, 67 F.4th 727 (5th Cir. 2023); *Sos v. State Farm Mut. Auto. Ins. Co.*, 21-11769, 2023 WL 5608014, at *6 (11th Cir. Aug. 30, 2023); *Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 69 (S.D.N.Y. 2022); *Paris v. Progressive Am. Ins. Co.,* 19-21761-CIV, 2020 WL 7039018, at *18 (S.D. Fla. Nov. 13, 2020); *Ostendorf v. Grange Indem. Ins. Co*., 2:19-CV-1147, 2020 WL 5366380, at *3 (S.D. Ohio Sept. 8, 2020); *Jones v. Gov't Employees Ins. Co.,* 6:17-CV-891ORL40LRH, 2019 WL 1490703, at *4 (M.D. Fla. Apr. 4, 2019).

In fact, the undersigned is not aware of a single motion for certification that has been denied in any federal or state court in similar insurance cases seeking sales tax or regulatory fees as part

of ACV. This Court should follow the well-reasoned analyses of these courts and similarly grant class certification here of the Settlement Class. It should be noted that while Defendant concurs in this request for preliminary approval, Defendant maintains the position that this would not be an appropriate case for a litigation, as opposed to a settlement class, and reserves all its rights in this regard, including with respect to all the class action requirements discussed below, should final approval of this proposed Settlement not eventuate.

### A. The Class is Numerous Such That Joinder is Impracticable.

A class is sufficiently numerous where "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A "plaintiff need not show the precise number of [class members]" if the impracticability of joinder is clear. *In re Dynegy, Inc., Sec. Litig.*, 226 F.R.D. 263, 268 (S.D. Tex. 2005); *see Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir. 1999) (finding 100-150 members is generally certifiable).

Here, Plaintiff has examined Defendant's data for total loss claims, which reveals potentially thousands of Settlement Class Members. *See* Schwartzbaum Decl. ¶ 36. As such, the members of the Settlement Class are so numerous that individual joinder is impracticable. *See in re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 482 (finding numerosity satisfied for under 4,000 claimants).

### B. There are Questions of Law and Fact Common to the Class.

The commonality requirement is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not require that all questions of law or fact raised in the litigation be common." *In re Chinese-Manufactured Drywall,* 424 F. Supp. 3d at 482 (citing 1 WILLIAM B. RUBENSTEIN, ALBA CONTE, AND HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 3:20 (4th ed. 2010)). Rather, "[t]he commonality

requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members." *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("even a single common question will do"). While the requirement may require common injurious conduct—here, failure to pay ACV—it does not require common damages. *See In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (noting that although class members must raise "one contention that is central to the validity of each class member's claims[,]" this "contention need not relate specifically to the damage component of the class members' claims"). Given all the above, the Rule 23(a)(2) commonality "requirement is easily met in most cases." *Stewart*, 669 F.2d at 335.

Here, commonality is satisfied because whether Allstate breached the allegedly form Policies by failing to pay Sales Tax and/or Transfer fees on total-loss claims is a common question of law, and the interpretation of the Policy language will provide a common answer. *See, e.g., Angell*, 573 F. Supp. 3d at 1159-60 (commonality established where "[t]he common issue to be resolved is whether GEICO breached the form policies, underpaying ACV by withholding mandatory fees and/or leased sales tax); *Allapattah v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (commonality established where the court interpreted materially similar contracts); *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 555, n.7 (W.D. Tex. 2020) (interpretation of form insurance contract is a common issue, because even if policy is ambiguous, it is interpreted against insured without resort to extrinsic evidence); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D. N.Y. 2004) (commonality requirement satisfied where "[a]djudication of the plaintiffs claim will require the Court to interpret…substantively similar, if not identical" terms across an insurer's auto policies); *Burton v. Mt. W. Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 608 (D.

Mon. 2003) ("One question common to [the class] is whether Mountain West's failure or refusal to stack med-pay benefits…violated common provisions of the insurance policies").

The policy language at issue is the same for all Settlement Class Members, who were subject to the same business practices. Schwartzbaum Decl. ¶ 37. This litigation revolves around the same common question: whether ACV is properly interpreted to include Sales Tax and Transfer Fees. Since a ruling on that issue "will affect all or a significant number of the putative class members," the commonality test is met. *Marcus v. J.C. Penney Co., Inc*., NO. 6:13-cv-736-MHS-KNM, 2016 WL 8604331, at *3 (E.D. Tex. 2016), *R. & R. adopted*, 2017 WL 907996 (E.D. Tex. 2017).

Moreover, it makes no difference that some Settlement Class Members may be entitled to Sales Tax while others may be entitled to Transfer Fees. This is because whether either (or both) are owed will be determined in the same way; either ACV includes the costs necessary to replace property or it does not. *See Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (The commonality requirement is satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated"); *see Forbush v. J.C. Penney Co*., 994 F.2d 1101, 1106 (5th Cir. 1993) ("[T]he necessity for even somewhat complex individual calculations [of damages] does not supply a basis for concluding that Forbush has not met the commonality requirement."). Thus, the critical question in this litigation is how ACV should be interpreted, the resolution of which will resolve a substantial element of every Settlement Class Members' claim.

It is for this reason that materially identical claims have been found to easily meet the commonality requirement. *See, e.g., Angell*, 573 F. Supp. 3d at 1159-60 ("[t]he common issue to be resolved is whether GEICO breached the form policies, underpaying ACV by withholding

mandatory fees and/or leased sales tax); *Sos*, 2023 WL 5608014, at *6 ("[t]he question of whether State Farm breached its contractual obligations to insureds by not paying full sales tax and fees is common to all putative class members"); *Paris,* 2020 WL 7039018, at *18 (the questions of "whether the policy language requires Progressive to pay sales tax and transfer fees as part of the [ACV] of a vehicle[] are common to all [class members]"); *Jones* 2019 WL 1490703, at *4 (same). Respectfully, there is no reason for this Court to deviate from these cogent and well-founded opinions. The commonality requirement is satisfied here.

### C. Plaintiff's Claims are Typical of the Class Claims.

Rule 23(a) requires the claims of the representative party to be "typical" of class members' claims. Fed. R. Civ. P. 23(a)(3). The analysis "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *In re Dell Inc*., A-06-CA-726-SS, 2010 WL 2371834, at *4 (W.D. Tex. June 11, 2010) *aff'd sub nom*., *Dell*, 669 F.3d 632. "Typicality is satisfied when the named plaintiffs' claims [] arise from the same common nucleus of operative facts as the claims of [class members]." *Id.* "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001).[3]

As discussed *supra* Part II(B), Allstate's policies and practices described herein are allegedly uniform. Plaintiff's and the Settlement Class Members' claims arise from the same challenged conduct and are based on the same legal theory—Allstate materially breached their (identical) insurance contracts because ACV includes costs reasonably likely to be incurred

---

[3]     "The inherent logic of the typicality requirement is that a class representative will adequately pursue her own claims, and if those claims are 'typical' of those of the rest of the class, then her pursuit of her own interest will necessarily benefit the class as well." *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 482 (citation omitted).

without any precondition. *See Angell*, 573 F. Supp. 3d at 1159-60 (find typicality where plaintiffs and class alleged Geico underpaid ACV by failing to pay sales tax and transfer fees based on uniform policy); *see also James*, 254 F.3d at 571 (typicality analysis examines "whether the class representative's claims have the same essential characteristics of those of the putative class"). Moreover, Plaintiff's claims and the Settlement Class Members' claims are subject to the same affirmative defenses. *See Volino v. Progressive Cas. Ins. Co.*, No. 21 Civ. 6243 (LGS), 2023 U.S. Dist. LEXIS 44666 (S.D.N.Y. Mar. 16, 2023), Rule 23(f) petition denied, ECF No. 234 (Mandate of 2d Cir. Case No. 23-0472) (rejecting insurance company's challenges to typicality and finding that, "[c]ontrary to Progressive's argument, the named Plaintiffs' claims, and Progressive's related defenses, are typical of the class as a whole."). Indeed, it has been held that even the presence of a unique defense or factual circumstance does not preclude a finding of typicality unless it is likely to be central to the litigation. *See Lehocky v. Tidel Techs., Inc*., 220 F.R.D. 491, 502 (S.D. Tex. 2004) ("[T]he key typicality inquiry is whether a class representative would be required to devote considerable time to rebut Defendants' claims.") Here, there is no evidence of unique claims or defenses precluding a typicality finding.

Finally, it is significant that courts have found in virtually identical ACV class actions that the plaintiff's claims were typical of class members' claims. *See, e.g., Angell*, 573 F. Supp. 3d at 1155; *Jones*, 2019 WL 1490703 at *5 ("Plaintiffs' claims are typical of the putative class [because they] involve the alleged breach of identical contractual provisions pursuant to GEICO's standard practice[s]"); *Sos v. State Farm Mut. Auto. Ins. Co.,* 617CV890ORL40LRH, 2019 WL 3854761, at *4 (M.D. Fla. May 2, 2019), *aff'd,* 21-11769, 2023 WL 5608014 (11th Cir. Aug. 30, 2023) (same as to sales tax and title fees); *Joffe v. GEICO Indem. Ins. Co*., 18-61361-CIV, 2019 WL 5078228, at *4 (S.D. Fla. July 31, 2019) (same). Typicality is similarly satisfied here.

**D.  Plaintiff and Class Counsel are Adequate Representatives.**

Rule 23(a) requires that "the class representatives. . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The purpose of the adequacy requirement is to ensure the plaintiffs "suffer the same injury" as class members and identify whether they have interests antagonistic to the class. *In re Deepwater Horizon*, 785 F.3d at 1015. "The central component of class representative adequacy is the absence of conflicts of interest between the proposed representatives and the class." *In re Chinese-Manufactured Drywall,* 424 F. Supp. 3d at 482 (citation omitted). In contrast, "[a]dequacy of counsel asks whether the attorneys who seek to represent the class are competent to do the job." *Id.* (citation omitted). With regard to the former, a court must consider whether any proposed class representative has an interest "materially adverse to some of the class" and whether he or she "is properly qualified to assume the role of class representative." *Id.* (citation omitted). As to the latter requirement, "courts consider the competence and experience of Class Counsel, attributes which will most often be presumed in the absence of proof to the contrary." *Id.* (citation omitted).

Here, Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Settlement Class Members whom she seeks to represent. Moreover, she is committed to protecting the interests of the Class, as seen by her prosecution of the claim through the counsel she retained and engagement in the discovery process. *See Lehocky v. Tidel Techs*., Inc., 220 F.R.D. 491, 503 (S.D. Tex. 2004) (engaging in discovery and "selection of skilled counsel" are indicative of adequacy). Moreover, Plaintiff's counsel is competent and experienced in complex class action litigation, including successfully litigating class action cases like this one, where insurers breached contracts with insureds in the calculation of the ACV of a total loss vehicle. Schwartzbaum Decl. ¶ 39. Because Plaintiff and Class Counsel will protect

Settlement Class Members' interests, this Court should appoint Plaintiff as Class Representative and her counsel as Class Counsel.

### E.  Common Issues Predominate over Individual Issues.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The question is not whether plaintiffs and class members will prevail, but rather "whether they will fail or succeed together." *Erica P. John Fund, Inc. v. Halliburton Co*., 718 F.3d 423, 431 (5th Cir. 2013) *vacated and remanded on other grounds*, 134 S. Ct. 2398 (2014). Predominance does not require all questions of law and fact to be common, but only that the common question(s) predominate over individual questions. *See Robinson v. Tex. Auto. Dealers Assoc.,* 387 F.3d 416, 421 (5th Cir. 2004). The Fifth Circuit—and others—have helpfully explained that the analysis is primarily a question of how a trial would be conducted, and whether the proof offered would apply class-wide or only to individual class members. *See, e.g., Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 218 (5th Cir. 2003) ("To decide whether common issues predominate, the district court must consider how a trial on the merits would be conducted if a class were certified."); *Brown v. Electrolux Home Prods., Inc*., 817 F. 3d 1225, 1234 (11th Cir. 2016) (courts should identify the elements of the parties' claims and then "classify these issues as common questions or individual questions by predicting how" the elements will be proved). If the addition or subtraction of class members would not significantly impact the quantity or substance of proof, courts can be confident that common issues predominate. *See City of San Antonio v. Hotels.com*, No. SA-06-CA-381, 2008 U.S. Dist. LEXIS 58793, at *31 (W.D. Tex. May 27, 2008)

Here, the predominance prong is easily satisfied because the common question (i.e., whether Allstate's uniform policies include coverage for ACV Sales Tax and Transfer Fees after

a total loss) dominates over individual questions. Schwartzbaum Decl. at ¶ 40. Indeed, courts routinely find common issues predominate in cases involving interpretation of uniform insurance policies. *See, e.g., Angell*, 573 F. Supp. 3d at 1160 (certifying class and finding predominance where case centered on whether insurer breached uniform insurance policy by paying less than the ACV); *Stuart v. State Farm Fire & Cas. Co*., 910 F.3d 371, 375 (8th Cir. 2018) (affirming class certification where district court had found that whether the insurer breached the "form policies in plaintiffs' insurance contracts" by paying less than ACV was a "common, predominating question of law"); *Hicksform v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 459-60 (6th Cir. 2020) ("[W]hether State Farm breached Plaintiffs' standard form contracts by deducting labor depreciation from their ACV payments" predominated over individualized calculations of damages); *Leszczynski v. Allianz Ins*., 176 F.R.D. 659, 675 (S.D. Fla. 1997) ("A legal determination as to whether the [auto] policy in question covers claimants in this factual situation is the predominant question of interest among the class members."); *Steinberg v. Nationwide Mut. Ins. Co*., 224 F.R.D. 67, 79-80 (E.D. N.Y. 2004) (predominance met because the "automobile insurance contracts contain similar, if not identical, key terms pertinent to this litigation" and "claims arising out of form contracts are particularly appropriate" for class treatment); *Bally v. State Farm Life Ins. Co*., 335 F.R.D. 288, 304 (N.D. Cal. 2020) (common question of whether insurer breached the insurance policies at issue predominated because "[t]he terms of the Policy are the same for all class members").

Moreover, instructive here is an analysis of the "substantive issues" that will control the outcome of this litigation—including at trial, if necessary—and "assessing which issues will predominate, and then determining whether the issues are common to the class[.]" *Boles v. Moss Codilis*, LLP, SA-10-CV-1003-XR, 2012 WL 12861080, at \*12 (W.D. Tex. Jan. 17, 2012)

(citation omitted). The question that will control the outcome in this case is whether Allstate's failure to include Sales Tax and Transfer Fees as part of the ACV constitutes a breach of contract.[4] Not only does the answer to that question depend on alleged form policy language equally applicable to all Class members, but it is also a legal question of contract interpretation that almost certainly will be resolved at summary judgment. *See Snelling & Snelling, Inc. v. Fed. Ins. Co*., 205 F. App'x 199, 201 (5th Cir. 2006). Even in theory, the only triable issue is whether Sales Tax and/or Transfer Fees are *reasonably* necessary to replace a vehicle in Louisiana. *See Greenspoint Inv'rs, Ltd. v. Travelers Lloyds Ins. Co.*, CIV.A. H-10-4057, 2015 WL 965730, at *5 (S.D. Tex. Mar. 3, 2015) (whether a cost is "reasonably likely to be incurred" is a factual question). If a trial were to be necessary, the proof that would be offered—testimony addressing the likelihood or necessity that Sales Tax and Transfer Fees will be incurred in replacing a vehicle in Louisiana— would apply equally to the Settlement Class Members.

Obviously, if the Court finds in favor of Allstate on the contract interpretation issue, the question of damages would be moot. *Cf. Erica P. John Fund, Inc.*, 718 F.3d at 431 (predominance inquiry is not whether class members will prevail, but whether they will prevail or fail together). If, however, the Court instead finds in favor of the Settlement Class, the calculation of damages— applicable Sales Tax plus applicable Transfer Fees less amounts thereof already paid—will be mechanical and formulaic. Thus, while the amount of damages may vary (because adjusted vehicle values vary and the amount of registration fees varies by county), the measure of damages is common, and it is the methodology that matters for purposes of predominance. *See* NEWBERG

---

[4]    In Louisiana, a breach of contract claim has three essential elements: "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) (citation omitted).

ON CLASS ACTIONS § 12:2 ("[A] common method for showing individual damages—a simple formula [that can] be applied to each class member's … records—[is] sufficient for the predominance and superiority requirements to be met."); *see Morris v. Wachovia Sec., Inc*., 223 F.R.D. 284, 299 (E.D. Va. 2004)  (noting that "differences in damages among the potential class members do not generally defeat predominance if liability is common to the class."). As the Fifth Circuit has explained, while calculating damages according to a mechanical formula prescribed by the Court requires a factual inquiry, such inquiry is based on objective criteria about which there cannot be a reasonable dispute and thus "[i]t [is not] necessary to hear evidence on each claim." *Roper v. Consurve, Inc*., 578 F.2d 1106, 1112 (5th Cir. 1978).

It is for this reason that courts addressing materially identical claims have found the predominance requirement to be easily met. *See, e.g., Angell*, 573 F. Supp. 3d at 1160; *Jones*, 2019 WL 1490703, at *5; *Sos*, 2023 WL 5608014, at *7 (because sales tax and title transfer fees could be applied formulaically across the class, "[p]redominance is easily met."); *Paris*, 2020 U.S. Dist. LEXIS 212127, at *26 ("The predominate issue . . . is whether Defendants' policies include coverage for sales tax and transfer fees without precondition" and would be resolved through "interpretation of uniform contract language"). The same is true here: after adjudicating class-wide issues, all that will remain, if Plaintiff and the Class prevail, will be ministerial calculation of damages utilizing Defendant's own records—certainly, there will be no need for individualized proof concerning all of the elements of the claim. Individual damages can then be calculated and confirmed in a supervised post judgment process. *See Clower v. Wells Fargo Bank, N.A*., 259 F.R.D. 253, 260 n.6 (E.D. Tex. 2009) (favorably citing authority that courts could appoint a magistrate to oversee individual calculation of damages according to method prescribed by court or jury).

**F.   Class Treatment is Superior.**

In considering whether class treatment is a superior method of adjudication, courts consider the following non-exhaustive factors: A) class members' interests in individually controlling the prosecution; B) whether any litigation concerning the controversy already exists; C) the desirability of concentrating the litigation in the forum; and D) manageability. Fed. R. Civ. P. 23(b)(3).

The most important factor is the extent to which class members have an interest in individually controlling prosecution because, in the Fifth Circuit, the most compelling reason to find class treatment superior is where the litigation concerns "negative value suits." *Mitchell v. State Farm Fire & Cas. Co*., 327 F.R.D. 552, 564 (N.D. Miss. 2018). Negative value suits are where the cost to bring suit exceeds the stakes—or value—of the claim to class members. *See id.* Obviously, putative class members have little interest in individually prosecuting a claim if the cost to do so exceeds the amount he or she would secure if successful. *See id.; see also McCormick v. 7-Eleven, Inc.,* 3:06-CV-0127-N, 2009 WL 10704102, at *8 (N.D. Tex. Mar. 12, 2009) (finding superiority because "given the minimal damages likely at stake for the vast majority of individual claimants, they are unlikely to pursue individual claims").

Here, the typical class claim will be hundreds of dollars, which, to put it mildly, is relatively small when compared to the cost of litigating a breach of contract case against one of the largest insurance companies in the world. *See Angell,* 573 F. Supp. 3d at 1160 (finding superiority where litigation concerns negative value suits). The fact that the costs of bringing individual actions outweigh the expected recovery is often dispositive of superiority. *See, e.g., Pitt v. City of Portsmouth*, 221 F.R.D. 438, 445 (E.D. Va. 2004) ("The most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit[,]" meaning that the expected

individual damages are less than the costs to litigate the case) (quoting *Castano v. American Tobacco Co*., 84 F.3d 734, 748 (5th Cir. 1996)). Since the cost to bring suit would far exceed the amount Settlement Class Members can individually secure if successful, this case is quintessentially a negative value suit. Thus, the most important factor weighs in favor of a finding of superiority. *See City of San Antonio v. Hotels.com*, SA-06-CA-381-OG, 2008 WL 2486043, at *13 (W.D. Tex. May 27, 2008) (suit was "negative value" notwithstanding that damages ranged up $50,000.00).

Further, Plaintiff and Class Counsel are unaware of any other Louisiana litigation against Defendant raising these claims—and even if there were, it would nevertheless be desirable to concentrate litigation of these claims into one court and in one action for purposes of efficiency and judicial economy. Schwartzbaum Decl. at ¶ 41; *see Frey v. First Nat'l Bank Southwest*, 2013 U.S. Dist. LEXIS 37153, at *22, n.5 (N.D. Tex. Feb. 20, 2013) (observing that "[n]o other proposed class plaintiff has filed suit") (citation omitted). Concentrating litigation in a single forum is preferable because requiring individual trials would "require enormous redundancy of effort, including duplicative discovery, testimony by the same witnesses in potentially hundreds of actions, and relitigation of many similar, and even identical, legal issues." *Gunnells v. Healthplan Services, Inc*., 348 F.3d 417, 426 (4th Cir. 2003).

Finally, class treatment is manageable given that liability, which depends entirely on contract interpretation, will be resolved—as a matter of law at summary judgment—for all class members in a single stroke, and the only "individual" issues theoretically implicating manageability can be resolved through mechanical application of the damages formula from the Court's ruling on liability. *See In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1045 (N.D. Miss. 1993) (finding that "individual damage assessment" does not render class treatment unmanageable

because the court can "employ reasonable means and methods to streamline" such proceedings, particularly in light of "the advantages of consolidated treatment of common issues of liability.").

To be sure, class treatment is more manageable than managing thousands of individual cases, which is why manageability concerns rarely preclude class treatment. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) ("[F]ailure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule"); *accord Klay v. Humana, Inc.*, 382 F.3d 1241, 1272–73 (11th Cir. 2004) (explaining superiority is a comparative analysis and, thus, manageability concerns "will rarely, if ever, be in itself sufficient to prevent certification of a class"). In reality, there are no manageability concerns—identifying Class members is formulaic and based on objective, verifiable data in Defendant's records.

Class treatment adjudication is the superior method for resolving this dispute. Accordingly, preliminary certification of the Settlement Class is warranted for settlement purposes.

### III.     THE AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.

A class settlement may be effectuated only with court approval, after notice to the class, pursuant to Fed. R. Civ. P. 23(e). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). At the preliminary approval stage, "the settling parties bear the burden of demonstrating the settlement is fair, reasonable, and adequate." *Nelson v. Constant*, No. 17-14581, 2020 U.S. Dist. LEXIS 160726, at *9 (E.D. La. Sept. 2, 2020) (citation omitted).

However, "the standards for granting preliminary approval are not as stringent as those applied to a motion for final approval: The questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Id.* at *9 (citation omitted). Indeed, "[i]f the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods.*, 310 F.R.D. 300, 314–15 (E.D. La. 2015) (citations omitted).

This is because there is a "strong judicial policy favoring the resolution of disputes through settlement." *Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir. 2004) (quoting *Parker v. Anderson*, 667 F. 2d 1204, 1209 (5th Cir. 1982)). The "public interest favoring settlement is especially apparent in the class action context where claims are complex and may involve a large number of parties, which otherwise could lead to years of protracted litigation and sky-rocket expenses." *Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (citation omitted).

To determine whether a settlement is fair, reasonable, and adequate, Rule 23(e) instructs courts to consider whether: (1) the class representatives and Class Counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (3)

the proposal treats class members equitably relative to each other. [5] In performing this analysis, courts in the Fifth Circuit consider the following factors: (1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) plaintiffs' probability of success; (5) the range of possible recovery; and (6) the opinions of Class Counsel, class representatives, and absent class members. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Each of these factors support a finding that the class Agreement is fair, reasonable, and adequate.

### A.  Procedural Factors Favor Approval

First, Plaintiff and her counsel adequately represented the class. The adequacy requirement mandates an inquiry into "the zeal and competence of the representative['s'] counsel and ... the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001). Plaintiff (through counsel) engaged in extensive litigation and motion practice, serving discovery requests that elicited documents demonstrating the contours of the Settlement Class and Defendant's practices and procedures that were used to enter into the Agreement. Thus, Plaintiff has been intimately involved with the litigation and strongly supports the Settlement. Schwartzbaum Decl. ¶ 19.

Moreover, Class Counsel is particularly experienced in litigation, certification, trial and settlement of class action cases across the nation involving the exact same issues. *See* Schwartzbaum Decl. ¶ 35. Class Counsel thoroughly investigated and analyzed Plaintiff's claims

---

[5]    The first two "procedural" factors examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement," while the remaining "substantive" factors address "the terms of the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee's Note.

and engaged in motion practice, data analysis and negotiation. *Id.* ¶ 5. Thus, Class Counsel was able to accurately evaluate the strengths, weaknesses and value of the case, ultimately obtaining the Agreement that recovers essentially 100% of the damages sought in the Complaint. *Id.* ¶ 29.

Second, the Agreement was negotiated at arm's length between sophisticated counsel before an experienced mediator. *See* Ungar Decl. ¶ ___. *see also City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."). Moreover, prior to mediation, the parties extensively litigated the claims through a motion to dismiss and discovery. *See Diaz v. Hillsborough Cnty. Hosp. Auth.,* 8:90-CV-120-T-25B, 2000 WL 1682918, at *6 (M.D. Fla. Aug. 7, 2000) (years of contested litigation prior to settlement demonstrates lack of collusion). The parties entered the proposed settlement agreement only "after a full-day mediation—which suggests the settlement was not the result of improper dealings." *Celeste Neely*, 4:21-CV-307-SDJ, 2022 WL 17736350, at *4 (E.D. Tex. Dec. 16, 2022) (quotation and citation omitted); *see* Schwartzbaum Decl. ¶¶ 12-13; *see* Ungar Decl. ¶ ___. This is critical because "[a] settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (8th ed. 2011). Furthermore, there is no evidence of fraud or collusion. *See Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, at *33 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary.").

### B.  Substantive Factors Favor Approval

First, the relief is adequate given the complexity, expense and likely duration of this litigation. This is a complex and hotly contest litigation—Defendant continues to deny any fault

or wrongdoing to the Plaintiff and Settlement Class Members. In pursuing this Action and considering settlement, Plaintiff contended with legal authority that was inconsistent to her claims. Specifically, numerous courts have held that sales tax and title and registration fees are not part of a totaled vehicle's ACV, including the Fifth Circuit. *See, e.g.*, *Singleton v. Elephant Ins. Co.*, 953 F.3d 334 (5th Cir. 2020); *Pieczonka v. Progressive Select Ins. Co.*, 840 Fed. Appx. 856 (6th Cir. 2021); *Thompson v. Progressive Universal Ins. Co.*, 420 F. Supp. 3d 867 (W.D. Wis. 2019). The Seventh Circuit affirmed dismissal of a claim that the ACV of a totaled vehicle includes sales tax and fees under very similar policy language. *Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020). Obviously, Plaintiff believes these cases were wrongly decided and/or are distinguishable because they were based on state law materially different than Louisiana state law, but it is clear that this is a complex legal issue. As such, there is no guarantee that Plaintiff and the Settlement Class Members will succeed at trial, let alone (if necessary) on appeal. *See Cole v. Collier*, 4:14-CV-1698, 2018 WL 2766028, at *4 (S.D. Tex. June 8, 2018) ("Absent settlement, the litigation would almost certainly have continued for years, with no assurance of as favorable a resolution. This factor weighs strongly in favor of approval of the Settlement.").

Moreover, should litigation continue, Plaintiff and the Settlement Class Members will incur exorbitant costs going through class certification, expert discovery, dispositive motion practice, trial and (inevitably) post-trial appeal. Evidence and witnesses from across the country would have to be assembled for trial. For these reasons, Plaintiff and Class Counsel appropriately determined a settlement outweighs the gamble and costs of further litigation, especially where claimants who assert a valid claim will receive 100% of the damages in the Complaint. *See In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006) (noting that, even for straightforward claims, approval of settlement

is favored where settlement "avoids the risks and burdens of potentially protracted litigation."); *see Hays v. Eaton Grp Attys., LLC*, No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029, at *25 (M.D. La. Feb. 4, 2019) (approving settlement where "Plaintiff is avoiding expense and delay and ensuring recovery for the Class."). Moreover, the immediate and considerable relief provided to the Settlement Class Members is more than adequate. *Hays,* 2019 U.S. Dist. LEXIS 17029, at *25 (approving settlement where it "makes monetary and injunctive relief available to Class members in a prompt and efficient manner.").

Second, the "method of processing class-member claims" is simple. The Claim form is pre-filled, postage pre-paid, and internet notice. Under both forms of notice, Settlement Class Members must simply attest to the information and send the prefilled Claim form back. *See* Agreement, Ex. A and B; *see also Wilson v. EverBank*, 14-CIV-22264, 2016 WL 457011, at *9 (S.D. Fla. Feb. 3, 2016) (finding significant that class members need not submit any additional evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete.").

Moreover, this type of settlement structure, where class members submit claim forms to make a claim for payment in the settlement process, is regularly approved by other courts. *See, e.g.*, *Gascho v. Global Fitness Holdings*, LLC, 822 F.3d 269, 282 (6th Cir. 2016) (affirming a claims-made class action settlement as fair and reasonable); *Bastian v. United Servs. Auto. Ass'n*, Case No. 3:13-cv-1454, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles where USAA's internal procedure for payment of sales tax in Florida was materially identical to GEICO's procedure in Ohio); *Cook v. Gov't Emples. Ins. Co.*, No.: 6:17-cv-891-ORL- 40KRS, 2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020) (same); *Lonardo v. Travelers Indem. Co.*, 706 F.

Supp. 2d 766, 783 (N.D. Oh. 2010) (approving settlement that required claim submissions to establish entitlement to settlement proceeds).

Third, the terms of the attorneys' fees award weigh in favor of approval of the Agreement. The proposed Agreement provides that Class Counsel may apply for attorneys' fees and costs not to exceed $1,150,000.00. Agreement at ¶ 79. Even if Class Counsel had not incurred a single dollar in costs—and, to be clear, Class Counsel incurred significant costs in litigating this Action—considering Plaintiff estimates the total exposure by Defendant to be $5,292,837.00, this attorney fee amount would constitute approximately 21.7% of the Class benefits. This falls comfortably within the benchmark set for attorneys' fees in the Fifth Circuit. Indeed, it is typical that "common benefit fees between 32-percent and 37-percent have been awarded." *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 497–98. The Fifth Circuit has approved of district courts' "use of the percentage method cross-checked with the *Johnson* factors." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012).[6]

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded their fees and costs from the recovery. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the

---

[6]    The *Johnson* factors—intended to ensure "a reasonable fee"—are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717, 720 (5th Cir. 1974).

named plaintiff's efforts." *In re Gould Sec. Lit.*, 727 F. Supp. 1201, 1203 (N.D. Ill. 1989). This doctrine also ensures that those who benefit from a lawsuit are not "unjustly enriched." *Van Gemert*, 444 U.S. at 478. The Fifth Circuit has directed that the fee be based upon a percentage of the class benefit so long as a *Johnson* cross check is performed. *Union Asset Mgmt.*, 669 F.3d at 644. Courts have significant discretion in choosing the proper percentage. *See id.* The fee that Allstate agreed not to oppose or otherwise object to is significantly *less* than percentages routinely recognized as reasonable in the Fifth Circuit. *See In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 498; *Di Giacomo v. Plains All Am. Pipeline*, CIV.A.H-99-4137, 2001 WL 34633373, at *13 (S.D. Tex. Dec. 19, 2001) (approving fees of 30% in class action settlement and noting the advantages of using the percentage method and that 20-30% is typically the benchmark); *Regmund v. Talisman Energy USA, Inc.*, 4:16-CV-02960, 2021 U.S. Dist. LEXIS 92346 (S.D. Tex. May 12, 2021) (agreeing that exercising discretion to apply percentage-of-the-fund analysis was sensible, approving fees of 25%, and noting such percentage was "at the low end" of percentages typically approved within the Fifth Circuit).

Moreover, paying Class Counsel fees separate from the Settlement Amount ensures that Settlement Class Members who make timely and valid claims receive 100% of their claimed losses. Simply put, Settlement Class Members could not achieve a better result if they hired their own counsel and individually litigated outside of this settlement. Further, the attorneys' fees amount did not impact the substantive Settlement terms at all—the parties did not even discuss attorneys' fees until after all other Settlement terms were finalized. *See* Ungar Decl. ¶ ___.

Fourth, Settlement Class Members are clearly treated equitably, in that they will receive the same Notice, the same claim process, are agreeing to precisely the same release, and are entitled to the similar benefits.

**C.  The Additional *Reed* Factors Favor Approval.**

First, the state of the proceedings weighs in favor of approving the settlement. "This factor asks whether the parties have obtained sufficient information 'to evaluate the merits of the competing positions.'" *In re Educ. Testing*, 447 F. Supp. 2d at 620 (quoting *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). "[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed . . . ." *Id.* at 620–21. "[W]hen the settlement proponents have taken affirmative steps to gather data on the claims at issue, and the terms of the settlement or settlement negotiations are not patently unfair, the Court may rely on counsel's judgment that the information gathered was enough to support a settlement." *Id.* at 621.

As previously mentioned, Plaintiff took substantial written discovery, securing thousands of pages and extensive data. Schwartzbaum Decl., ¶ 10. Moreover, Class Counsel has extensive institutional knowledge of Allstate's data systems and available information given they have litigated (almost to completion) multiple and virtually identical cases against other insurance providers in other states. *Id*. Through these efforts, the parties obtained sufficient information to make a reasoned determination on the desirability of settlement on the terms set forth in the Agreement. *Cf. Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (noting that class representatives can have sufficient information base even after a few months of litigation and even absent formal discovery). Class Counsel also hired experts to evaluate the data and prepare detailed damages estimates for each class members.

Second, as discussed above, this case is subject to legitimate risk. "Litigation is inherently risky and full of impediments, even where a defendant 'all but admitted' and 'the plaintiffs had a

27

strong chance of proving' liability." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *25 (quoting *In re Educ. Testing Serv. Praxis*, 447 F. Supp. 2d at 620–21)). A trial in this case would invariably involve risks to Plaintiff on the questions of liability and damages. *See Hays*, 2019 U.S. Dist. LEXIS 17029, at *25; *Singleton*, 953 F.3d 334; *Pieczonka*, 840 Fed. Appx. 856; *Sigler*, 967 F.3d 658. Proceeding without a settlement would require tremendous time and resources to litigate dispositive motions, prevail at trial, and prevail again on appeals to the Fifth Circuit. *See Reed*, 703 F.2d at 172 ("A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case.").

Third, the range of recovery obviously weighs in favor of approval since Plaintiff and the Settlement Class Members who make a valid claim are receiving 100% of the damages sought in this action. Agreement, ¶ 67; Schwartzbaum Decl., ¶ 14; *cf Hays*, 2019 U.S. Dist. LEXIS 17029, at *28 ("[A] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.") (quotation and citation omitted).

Fourth, Class Counsel supports the proposed settlement, lending further support to approval of the Agreement. *See Celeste,* 2022 WL 17736350, at *7 (approving settlement after considering, *inter alia*, plaintiff's counsel opinion). The Fifth Circuit has held that "absent fraud, collusion, or the like," a court "should be hesitant to substitute its own judgment for that of counsel[.]" *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

## IV.    THE COURT SHOULD APPROVE NOTICE.

Under Rule 23(e)(1), in approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), courts must further ensure that class members receive "the best notice that is practicable under the circumstances, including individual

notice to all members who can be identified by reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). With respect to substance, notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the Notice Program satisfies all applicable requirements of law and Constitutional Due Process. For convenience of Settlement Class Members, Defendant will extract available information from their claim records to pre-fill relevant information on the claim forms. *See* Agreement, Ex. A. Moreover, the notices provided for in the Agreement—which includes a Postcard Notice (with detachable, pre-filled, pre-addressed Claim Forms), a Long Form Notice posted to the Settlement Website (with information about the Settlement and relevant documents), an Email Notice for those Members for whom Allstate possesses a valid email address, and a toll-free telephone number for those class members to submit questions and request information—are more than reasonable. *See Davis v. Mindshare Ventures LLC*, No. 4:19-cv-1961, 2020 U.S. Dist. LEXIS 105994, at *5–6 (S.D. Tex. June 12, 2020) (finding notice—which "include[d] the postcard notice, the detachable claim form, and the question-and answer notice to appear on the dedicated settlement website"—met the requirements of Rule 23(c)(2)(B) and due process); *see Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 301–02 (N.D. Miss. 2014) (approving notice program that included one postcard notice, a notice by publication, and a long form notice available on a settlement website).

Moreover, the proposed notice includes (i) the nature of the action; (ii) the class definition; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; (vii) the binding effect of a class judgment on members, (viii) a clear explanation of the terms of the Settlement, (iv) the amount sought in attorneys' fees and service award, and (v) informs Settlement Class Members of their right to object to seek exclusion and the method by which to do so. *See* Agreement, Exhibit D.

Further, the Parties have selected and recommend Epiq Systems ("Epiq") as the Settlement Administrator to handle the notices and all aspects of the settlement administration. *See* Agreement ¶ 41. Epiq is one of the leading notice administration firms in the United States. *See* Schwartzbaum Decl. ¶ 21. The Settlement Administrator's duties include, but not limited to: (i) overseeing the provision of Notice to the Class; (ii) overseeing identification of addresses for any returned mail, and remaining notice; (iii) processing Claim Forms; (iv) contacting Settlement Class Members, if any, whose Claims Forms are deficient to attempt to obtain a cured form; (v) processing any cured Claim Forms; (vi) sending all Claim Forms to Allstate for payment or challenge and to Class Counsel; (vi) forwarding inquiries and questions to Class Counsel; (vii) providing a certification to the Court regarding the administration and processing of claims and, in the event that the Settlement Administrator issues checks, issuing the payments to the Claimants as set forth herein; and (viii) establishing and maintaining a settlement website and call center. *Id.* at ¶ 41. Accordingly, the proposed Notice is reasonably calculated to reach the maximum number of Class Members and comports with all applicable law.

For the convenience of the Court, below is a proposed preliminary schedule outlining the dates set forth in the Settlement Agreement, which comports with the Schedule outlined in the

proposed Order preliminarily approving of the proposed Settlement, which is affixed as Exhibit F to the Settlement Agreement.

## PROPOSED PRELIMINARY SCHEDULE

| # | Action | Deadline |
|---|--------|----------|
| 1 | Send Mailed Notice and Email Notice | 90 days after Preliminary Approval |
| 2 | Send Second Email Notice | At a date to be determined by the Settlement Administrator |
| 3 | Plaintiff's Application for Attorney's Fees and Costs, and for a Service Award for the Named Plaintiff | 45 days before Final Approval Hearing |
| 4 | Plaintiff's Motion for Final Approval | 20 days before Final Approval Hearing |
| 5 | Opt-Out Deadline | 30 days before Final Approval Hearing |
| 6 | Objection Deadline | 30 days before Final Approval Hearing |
| 7 | Final Approval Hearing | Month, Day Year, at Time |
| 8 | Claims Deadline | 15 days after Final Approval Hearing |

## CONCLUSION

Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Settlement, enter an order of preliminary approval including, in substantially the same form, the content of the proposed Order attached as Exhibit F to the Agreement.

Dated April 2, 2024                          Respectfully submitted,

                                            S/Soren E. Gisleson
                                            Soren E. Gisleson, Esq.
                                            La. Bar No. 26302
                                            **HERMAN HERMAN & KATZ, LLC**
                                            820 O'Keefe Avenue
                                            New Orleans, Louisiana 70113
                                            Telephone: (504) 581-4892
                                            Fax No. (504) 561-6024
                                            sgisleson@hhklawfirm.com

Adam A. Schwartzbaum*
Florida Bar No.: 093014
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Tel: 305-725-1245
E-Mail: adam@edelsberglaw.com


Andrew Shamis, Esq.*
Florida Bar No.: 101754
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299
E-mail: ashamis@shamisgentile.com

EDMUND A. NORMAND*
Florida Bar No.: 865590
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407-603-6031
E-Mail: ed@normandpllc.com
E-Mail: ean@normandpllc.com

*Admitted Pro Hac Vice*
***Attorneys for Plaintiff & Proposed Class***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 2, 2024, a true and correct copy of the foregoing was electronically filed with the Court's CM/ECF system and was thus served automatically upon all counsel of record in this matter.

*/s/ Soren E. Gisleson*