## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PAGGIWA CUMMINGS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, an Illinois Corporation,<br><br>Defendant. | Civil Action No.: 3:22-cv-00247-JWD-EWD<br><br>Judge: John W. Degravelles<br><br>Magistrate Judge: Erin Wilder-Doomes |

### PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Plaintiff Paggiwa Cummings ("Plaintiff"), individually and on behalf of the Settlement Class, files this Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class ("Motion"). Defendant Allstate Property & Casualty Insurance Company ("Allstate") does not oppose this Motion. The Settlement Agreement ("Agreement") was filed at ECF No. 56-1.[1]

### I.    FACTS

As set forth in the Motion for Preliminary Approval, ECF No. 55, this is a class action lawsuit on behalf of Louisiana insureds of Allstate and related entities who submitted covered first-party auto total-loss claims with dates of loss during the class period. *See* ECF No. 1 ("Compl.") ¶¶ 5-6, 25-26, 64, 72-78. All Settlement Class Members were insured under form insurance policies. *Id.* ¶¶ 5-6, 26, 28; ECF. No. 55-2 ("Schwartzbaum Decl.") ¶ 4. Plaintiff alleges Allstate

---

[1] Capitalized terms have the meanings provided in the Agreement.

failed to pay the mandatory fees required by Louisiana law to buy a replacement vehicle. Compl. ¶¶ 9-23, 42.

### A.    Plaintiff's Total Loss Claim and Allstate's Alleged Breach

Plaintiff and Settlement Class Members entered into Louisiana private passenger auto policy agreements to be insured by Allstate under terms contained in form policies (the "Policies") with material total loss physical damage terms that were the same for Plaintiff and all Settlement Class Members. Compl. ¶¶ 5-6, 26; Schwartzbaum Decl. ¶ 4. The Policies provided physical damage coverage for Plaintiff's and class members' total loss vehicles. Compl. ¶¶ 5, 26, 28-30. Plaintiff alleges the Policy requires Allstate to pay the ACV of totaled vehicles, including necessary costs of sales tax ("Sales Tax"), along with title fees, including title transfer and handling fees, and license plate transfer fees ("Transfer Fees"). *Id.* ¶¶ 26, 28. ACV is (1) defined as "the actual cost to purchase a comparable vehicle[,]" and (2) equal to the "replacement cost value less depreciation." *Id.*, *see also* LSA-R.S. 22:1892B(5). The Policy incorporates Louisiana law. Compl. ¶ 36.

Plaintiff alleges that: (1) an insured is required to pay Sales Tax and Transfer Fees when replacing a car to obtain new ownership and operate a vehicle;[2] and (2) Allstate is required to pay Sales Tax and Transfer Fees on total-loss claims. *Id.* ¶¶ 9-22, 27-30. Plaintiff alleges Settlement Class Members were underpaid the full ACV owed to them under the Policy given the omission of Sales Tax and Transfer Fees in total-loss ACV payments. *Id.* ¶¶ 23-24.

---

[2] There is a 4.45% State motor vehicle sales tax that applies to private passenger motor vehicles whether leased or owned. Compl. ¶ 10. In addition to the State sales tax, most parishes and many municipalities have a mandatory local sales tax ranging from 1.85 percent to 7 percent. *Id.* ¶ 11. Registration and tag fees include: (1) $3.00 for private passenger vehicle license plate transfer fee; (2) $20.00 minimum for an annual License fee for private passenger vehicles; (3) $3.00 for private passenger truck license plate transfer fee. *Id.* ¶¶ 18-20. Title fees include: (1) $68.50 for tag title fee; and (2) $8.00 for title transfer handling fee. *Id.* ¶20.

### B.     Class Member Claims.

Discovery established that approximately 59,072 class members submitted first-party total-loss claims during the class period and were not paid the Transfer Fees owed under the Policies. *See* Exhibit 1, Declaration of Epiq Senior Project Manager Eamon Mason ("Mason Decl.") ¶ 5. The total claimed underpayments estimated by Plaintiff upon data review produced in discovery is approximately $5,292,837.00. Agreement ¶ 68.

### C.     Procedural Background.

The Parties reached the proposed Agreement following a fulsome investigation into and discovery of the legal and factual issues. Class Counsel conducted extensive pre-suit investigation into the factual underpinnings of the practices challenged in this action, as well as the applicable law. Ultimately, the Agreement is the result of months of hard-fought litigation and negotiations.

On April 14, 2022, Plaintiff commenced this action against Allstate in the Middle District of Louisiana. Plaintiff alleged Allstate breached the terms of Class Members' auto insurance policies and violated Louisiana law when it failed to pay Plaintiff and the Settlement Class Members the full ACV replacement costs, including Sales Tax, Title Fees, Handling Fees and Tag Fees. *See generally* Compl. Plaintiff served Defendant on April 28, 2022 (ECF No. 7) and Defendant filed its ex parte Motion for Extension of Time to respond to the Complaint on May 09, 2022, which the Court granted on May 10, 2022. ECF No. 9.

On June 17, 2022, Defendant filed a Motion to Dismiss. ECF No. 11. Therein, Defendant argued, *inter alia,* that Plaintiff failed to state a cause of action for breach of contract and that LSA-R.S. 22:1892B(5) provided no private right of action upon which relief could be granted. *See generally Id.*

On July 7, 2022, Plaintiff filed her Response in Opposition to the Motion to Dismiss (ECF No. 17) arguing that much of Defendant's caselaw predated the enactment of La. R.S. §22:1892(B)(5) and that the bad faith claim survived based on the well-pleaded breach of contract claims. This Court agreed, and on May 31, 2023, issued a Ruling and Order denying Defendant's Motion to Dismiss. ECF No. 44.

Thereafter, the Parties engaged in an extensive discovery process with Plaintiff ultimately securing and analyzing thousands of documents, including spreadsheets containing thousands of data points. Schwartzbaum Decl. ¶ 10. The document review and data analysis were particularly time-intensive, meticulous and complex with such discovery eliciting documents demonstrating the contours of the Settlement Class and Defendant's practices and procedures. *Id.*

On July 24, 2023, the Parties filed a Joint Motion to Stay or Extend Deadlines Pending Mediation, to continue settlement negotiations by exploring prompt and cost-effective alternative resolution of the disputed issues to conserve the Parties' time and resources and promote judicial economy. ECF No. 47. On July 25, 2023, the Court granted the Joint Motion to Stay Pending Mediation or for Administrative Closure with Consent and stayed the case pending mediation. ECF No. 48.

Class counsel prepared extensively for mediation, reviewing all relevant documents, researching various legal issues and strategizing how best to approach mediation. Schwartzbaum Decl. ¶ 10. The Parties exchanged mediation submissions, discussing the strength and weaknesses of Plaintiff's allegations and damages, Defendant's potential defenses, and clarifying the factual and legal issues. The Parties further negotiated the content and format for electronic and paper claim forms, the content of the long form and summary class notices, and the settlement administration protocol.

4

On December 8, 2023, the Parties attended a full-day mediation with Mike Ungar, a highly regarded and experienced mediator and ultimately agreed to the material terms of the Agreement. *Id.* ¶ 12. After agreeing to the scope of the proposed Settlement Class and the monetary benefits to Settlement Class Members, the Parties separately, and with Mr. Ungar's assistance, negotiated and reached an agreement concerning the payment of the costs of notice and administration, attorneys' fees, litigation expenses and costs, and service award.

The Agreement was fully executed by all parties on April 02, 2024. ECF No. 56-1. There are no agreements between Plaintiff or Class Counsel and Defendant other than the Agreement.

### D. The Agreement Provides 100% Payment of Sales Tax and Transfer Fees Sought.

As Plaintiff explained in seeking preliminary approval, the proposed Agreement provides payment of 100% of ACV Sales Tax and Transfer Fees (minus a set off for fees already paid, if any, to the claimant) of the amount sought by Plaintiff and Settlement Class Members who submit a valid claim. Schwartzbaum Decl. ¶ 29; Agreement ¶ 66-68. Louisiana imposes regulatory fees associated with the titling or registration of a vehicle. *See* Compl. ¶¶ 17-22. The title fee is $68.50 for vehicles purchased from July 1, 2015, through the present, and $18.50 prior to July 1, 2015. *Id.*; *see also* La. R.S. § 32:728. The State imposes a $8.00 handling fee for vehicle titling and registration as well as license plate transfer fees. Compl. ¶ 22; *see also* La. R.S. § 32:412.1.

The cash benefit available to Class Members per the Agreement is approximately $5,292,837.00. Agreement ¶ 68. Under the Agreement, attorneys' fees, administrative expenses, and the class representative service award are to be paid by Defendant separately, meaning these costs will not reduce the amount to be paid to Settlement Class Members who submit valid claims. Agreement ¶ 78; Schwartzbaum Decl., ¶ 15. The Agreement secured significant future non-

monetary relief for Allstate insureds: As part of the settlement, Allstate agreed to pay title and handling fees in Louisiana moving forward. Schwartzbaum Decl. ¶ 16; Agreement ¶ 79.

### E. The Agreement Provided Robust Notice and Easy Claim Submission.

The Agreement, and this Court's Order directing the Notice Plan be effectuated as set forth in the Agreement, provided robust notice and a simple claim submission process. Pursuant to paragraph 43 of the Agreement and paragraphs 9 and 20 of the Preliminary Approval Order, Epiq mailed Postcard Notices—which included a detachable Claim Form, pre-populated with the claimant's information and prepaid postage—via U.S. first-class mail to 59,072 potential Settlement Class Members. Mason Decl. ¶¶ 11–17 & Ex. B thereto. The Claim Form (Ex. A to the Agreement) attached to the Postcard Notice did not require the insured to provide any information other than to sign the claim form and provide a corrected address if needed. The Postcard Notice also directed recipients to a Settlement Website, which was established by the Claims Administrator, and included information about the Agreement and links to documents related to the lawsuit and Agreement. Mason Decl. ¶¶ 19-20; Agreement ¶ 50.

Pursuant to paragraph 45-46 of the Agreement and paragraphs 9 and 20 of the Preliminary Approval Order, email notice was sent to Settlement Class Members for whom an email address was included in the class data. Mason Decl. ¶¶ 6–10 and Ex. A thereto; Agreement ¶ 45. The email had a simple hyperlink such that the Settlement Class Members needed only to click on the hyperlink, which brought them to a prefilled electronic claims form requiring an assent to the settlement terms. Agreement ¶ 46.

The Agreement required a second reminder email notice in the same form that also included a hyperlink to submit a prefilled electronic claim, which the Settlement Administrator confirmed was delivered in accordance with the Agreement and this Court's Order. Agreement ¶ 49; Mason

Decl. ¶ 18. The comprehensive nature of the Notice Plan is seen in that a fantastic *98.8% of Settlement Class Members* received direct, actual Notice. Mason Decl. ¶ 17; *cf. In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001) (holding Rule 23 and due process requisites satisfied where the record indicated only 77% of class members received notice of the settlement).

The Agreement required a Long Form Notice and other important case documents to be available to class members on the Settlement Website. Agreement ¶¶ 50-53; Mason Decl. ¶ 19.

Settlement Class Members were provided with the alternative option of downloading a claim form online that was either blank or pre-filled. Agreement ¶¶ 51–52. The website allowed Settlement Class Members to submit a claim without a Claimant ID Number by accessing a Blank Claim Form and entering their name, policy number or claim number, and address, and signing and electronically submitting the Claim Form. *Id.*; Mason Decl. ¶ 19.

The Agreement provided for a toll-free number for class members to submit questions and request additional information. Agreement ¶ 57; Mason Decl. ¶ 21. *See Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence that the terms of settlement are fair and reasonable).

### F.  The Agreement Provides a Limited Release.

The release is narrow. Agreement ¶ 23. Class members release claims only based on non-payment "of Sales Tax" and "Transfer Fees." *Id.* They do not release any claim for any other types of alleged under-valuation of vehicles or other types of claim underpayment. *Id.*

### G.  The Agreement Resolves a Case with Unsettled Legal Issues.

In pursuing the Sales Tax and Transfer Fees sought in this Action, Plaintiff contended with legal authority inconsistent with her claims. Specifically, Louisiana appellate courts have held that sales tax is not an element of ACV owed by an insurer in the event of a total loss. *State Farm Mut.*

*Auto. Ins. Co. v. Berthelot*, 98-1011 (La. 4/13/99), 732 So. 2d 1230, 1235; *Clark v. Clarendon Ins. Co.*, 2002-1314 (La. App. 3d Cir. 3/26/03), 841 So. 2d 1039. The reasoning of these opinions might have precluded Plaintiff from obtaining the relief sought here. Other courts have also ruled against insureds on similar claims. *See, e.g.*, *Wilkerson v. Am. Family Ins. Co.*, 997 F.3d 666 (6th Cir. 2021); *Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020). Plaintiff believes these cases are distinguishable and/or were wrongly decided, but these authorities demonstrate the risk of continuing litigation.

As to the Louisiana cases in particular, Plaintiff disputes the applicability of these decisions given the enactment in 2010 of La. Rev. Stat. § 22:1892(B)(5), which provides in part that settlement payments of total loss motor vehicle claims based on ACV should be "based on the actual cost to purchase a comparable motor vehicle." *See* 2010 La. H.B. 1011. Nevertheless, there are no Louisiana appellate courts who have addressed this issue, and the conflicting authority raises genuine uncertainty as to how the case would be decided on the merits (to say nothing class certification). The Agreement resolves these issues in favor of the Settlement Class.

### H.  The Agreement Provides Reasonable Attorneys' Fees.

This was a highly contested lawsuit relating to a novel legal theory without precedent relating to the payment of certain Sales Tax and Transfer Fees pursuant to a statute that had not been applied to similar facts. The proposed Agreement provides that Class Counsel may apply for attorneys' fees and costs not to exceed $1,150,000.00. Agreement ¶ 82; Schwartzbaum Decl. ¶ 15. This percentage for attorneys' fees (21.7%) falls within the benchmarks set for attorneys' fees in other Louisiana District Courts. The reasonableness of attorneys' fees and costs are set forth in the previously filed Motion for Attorneys' Fees and Costs and Service Award (ECF No. 64-1).

## II.     THE AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.

A class settlement may be effectuated only with court approval, after notice to the class, pursuant to Fed. R. Civ. P. 23(e). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). Whether a proposed agreement is sufficiently fair and reasonable is analyzed under a six-factor test: (1) the existence of any fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery; (4) the probability of success; (5) the range of possible recovery; and (6) the opinions of the counsel, class representatives, and absent class members. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)

The Agreement should be approved because it is fair, reasonable, and adequate, and is not the subject of collusion. Fed. R. Civ. P. 23(e)(2); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993); Scwartzbaum Decl. ¶ 13 (explaining arms-length negotiations). Critically, after robust Notice, not a single class member objected to the terms of the proposed Agreement or requested exclusion therefrom.

In addition to or consistent with the *Reed* factors, to determine whether a settlement is fair, reasonable, and adequate, Rule 23(e) instructs courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Each of these factors support finding the class Agreement is fair, reasonable, and adequate.

###           i.        Arm's Length Negotiations, Fraud, and Collusion

The Agreement is not the product of fraud or collusion as it was rigorous, hard fought, and the product of arm's length negotiation between sophisticated counsel. *See* Scwartzbaum Decl. ¶¶ 13. "The parties entered the proposed settlement agreement after a full-day mediation—which 'suggests the settlement was not the result of improper dealings.'" *Celeste v. Intrusion Inc.*, 2022 U.S. Dist. LEXIS 226841, at *12 (E.D. Tex. Dec. 16, 2022) (quotation omitted). Furthermore, there is no evidence of fraud or collusion. *See Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, at *33 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary.").

###           ii.       The Relief is Adequate Given the Complexity, Expense, and Likely Duration of Litigation

By reaching a settlement, "Plaintiff is avoiding expense and delay and ensuring recovery for the Class." *Hays v. Eaton Grp Attys., LLC*, No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029, at *25 (M.D. La. Feb. 4, 2019). Even for straightforward claims, settlement approval is favored where the settlement "avoids the risks and burdens of potentially protracted litigation." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006).

Defendant's Motion to Dismiss was fully briefed, and the issues presented to the Court were complex. There were risks to both sides relating to the Motion to Dismiss and the decision on class certification.  Moreover, the ultimate trial of this case involving extensive data would be lengthy, burdensome, and exceedingly costly in both time and resources of the parties and the Court. A judgment would likely be appealed thereby extending the litigation and forestalling relief for potential class members. "The settlement, on the other hand, makes monetary and injunctive relief available to Class members in a prompt and efficient manner." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *25. This factor thus supports approval of the Agreement.

### iii.    The Stage of the Proceedings

"This factor asks whether the parties have obtained sufficient information 'to evaluate the merits of the competing positions.'" *In re Educ. Testing Serv. Praxis Principles of Learning*, 447 F. Supp. 2d at 620 (quoting *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). "[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed . . . ." *Id.* at 620–21. "[W]hen the settlement proponents have taken affirmative steps to gather data on the claims at issue, and the terms of the settlement or settlement negotiations are not patently unfair, the Court may rely on counsel's judgment that the information gathered was enough to support a settlement." *Id.* at 621.

This proceeding had advanced to the point of full briefing on Defendant's Motion to Dismiss and the Parties took extensive discovery and engaged in lengthy arm's-length settlement negotiations. Scwartzbaum Decl. ¶¶ 9-10; ECF No. 18. Through these efforts, the parties obtained

sufficient information to make a reasoned determination on the desirability of settlement on the terms set forth in the Agreement. *Id.* ¶ 14.

### iv. The Factual and Legal Obstacles to Prevailing on the Merits

This case is subject to significant risk. "Litigation is inherently risky and full of impediments, even where a defendant 'all but admitted' and 'the plaintiffs had a strong chance of proving' liability." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *25 (quoting *In re Educ. Testing Serv. Praxis*, 447 F. Supp. 2d at 620–21). "A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172.

A trial would invariably involve risks to Plaintiff and the Settlement Class on both liability and damages. *See Hays*, 2019 U.S. Dist. LEXIS 17029, at *25. Plaintiff risked grant of the Motion to Dismiss or denial of class certification; and of course, appellate review of decisions on class treatment are difficult to predict. Proceeding without a settlement would require tremendous time and resources to litigate class certification, *Daubert*, and dispositive motions, prevail at trial, and prevail again on appeal of class certification, liability, and damages. *See id.* And this case is subject to an added dimension of legal obstacles as the theory pressed by Plaintiff is novel and arguably contradicted by opinions from Louisiana appellate courts which have not been overturned, as well as arguably persuasive opinions (albeit addressing the laws of different states) rejecting claims like Plaintiff's. *See Wilkerson*, 997 F.3d 666; *Sigler*, 967 F.3d 658.

### v. The Possible Range of Recovery and Certainty of Damages

Approval should not be withheld merely because the settlement amounts to less than the full *potential* recovery. "[A] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Hays*, 2019 U.S. Dist. LEXIS 17029,

at *28 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972), *aff'd in part*, *rev'd on other grounds*, 495 F.2d 448 (2d Cir. 1974) (a recovery of 3.2% to 3.7% of the amount sought is "well within the ball park").

Here, Allstate agreed to a settlement in which Settlement Class Members who make a timely claim are entitled to **100%** of the Sales Tax and Transfer Fees sought in this action. Agreement at ¶ 67; Schwartzbaum Decl. at ¶¶ 14-15. This recovery achieves the maximum possible recovery for Settlement Class Members who make a valid claim. It is *far* higher than amounts other courts have easily found to be fair and reasonable. *See, e.g.*, *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 304-05 (S.D. Miss. 2014) (approving damages of 46.5% of potential recovery and noting that "A satisfactory settlement could amount to a hundredth or even a thousandth part of a single percent of the potential recovery") (cleaned up) (citing *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982)); *In re Polyurethane Foam Antitrust Litig.*, 2015 U.S. Dist. LEXIS 23482, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide overcharges is an impressive result in view of these possible trial outcomes."); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 U.S. Dist. LEXIS 9705, at *9 (E.D. Pa. May 19, 2005) (11.4% of damages). Accordingly, this factor favors approval of the Settlement.

### vi.     The Opinions of Class Counsel and the Class Representative

The parties and Class Counsel unanimously support the proposed settlement, lending further support to approval. *See Celeste*, 2022 U.S. Dist. LEXIS 226841, at *21; *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (noting that "absent fraud, collusion, or the like," the Court "should be hesitant to substitute its own judgment for that of counsel"). After robust and

comprehensive Notice, *not a single Class Member objected or opted out*. This is an excellent result, indicating overwhelming (indeed, unanimous) approval of the proposed Agreement, which strongly favors approval. *See generally, e.g.*, *In re Oil Spill*, 295 F.R.D. 112, 150 (E.D. La. 2013) (noting that "one indication of the fairness of a settlement is the lack of or small number of objections"); *Quintanilla v. A & R Demolition Inc.*, No. H-04-CV-1965, 2008 U.S. Dist. LEXIS 37449, 2008 WL 9410399, *5 (S.D. Tex. May 7, 2008) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 527 (E.D. Ky. 2010) (finding that 12 objections out of a class of approximately 8,000 was "within the range of reasonableness" and militated in favor of approval); *Amos v. PPG Indus.*, No. 2:05-cv-70, 2019 U.S. Dist. LEXIS 139021, at *30 (S.D. Oh. Aug. 16, 2019) ("[N]o objections were filed, which creates the inference that all or most of the class members had no concerns about the proposed settlement. This positive response weighs in favor of approving the settlement.").

It is not that a "small number" of objections were filled—there were *none*. The importance of this cannot be overstated: typically, if the Parties believe they have a favorable Settlement and so does a court, notice is provided to absent class members so they can review the proposed terms and identify any alleged weaknesses or deficiencies, with the main purpose of the final Fairness Hearing—assuming the Parties disagree and choose not to modify the proposed terms in light of the objections—being to resolve such objections. Here, there are *no objections to resolve*. There is, in other words, no opposition whatsoever, notwithstanding a robust and comprehensive Notice program. This *strongly* militates in favor of approving the proposed Agreement.

### III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.

The Plaintiff seeks to certify a Settlement Class consisting of:

All Insureds, under any Louisiana automobile insurance policy issued by ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, and ALLSTATE INDEMNITY COMPANY and their subsidiaries or related insurance companies with the same operative policy language covering a vehicle with auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the relevant time period and who are mailed class notice and do not timely opt out from the settlement class.

Excluded from the Settlement Class are (1) Allstate, its agents, employees, subsidiaries, parents, and related entities, all present or former officers and/or directors of Allstate, the Settlement Administrator, the Mediator, Class Counsel, and any Judge of this Court and the Judge's staff and employees; (2) Individuals with claims for which Allstate received a valid and executed release; (3) Individuals who are not on the Notice list and who did not submit a valid Claim Form or Electronic Claim Form for payment under this Settlement Agreement; (4) Individuals who request exclusion from the Class; and (5) Individuals with claims for first-party property damage as to which the individual process of appraisal or arbitration or a lawsuit has been completed or initiated at the time this Settlement Agreement is filed.

Agreement ¶ 35. Rule 23's certification requirements "generally apply when certification is for settlement purposes." *In re Pool Prods. Distrib.*, 310 F.R.D. at 308. As shown below and as the Court already agreed, each Rule 23 requirement is met for purposes of Settlement.

While Defendant agrees that this case is appropriate for a settlement class, it maintains its position that the case would not have been appropriate for a litigation class and reserves all rights in this regard.

**A. The Class Meets All of the Requirements of Fed. R. Civ. P. 23(a)**

**i.    The Class is so numerous that joinder is impracticable.**

A class is sufficiently numerous where "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Class is comprised of 59,072 total-loss insureds. Mason Decl. ¶ 5. As such, numerosity is easily met. *See Nolan v. Exxon Mobil Corp.*, 2015 U.S. Dist. LEXIS 62619 *11 (M.D. La. May 13, 2015) (proving numerosity requires merely "some evidence or reasonable

estimate of the number of purported class members.") (internal quotations omitted); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (holding 100-150 members is generally certifiable).

### ii. Questions of law and fact are common to the Class.

Rule 23(a)(2)'s commonality requirement is satisfied when "there are questions of law or fact common to the class." The plaintiff must show "at least one issue, the resolution of which will affect all or a significant number of the putative class members." *A.A. v Phillips*, 2021 U.S. Dist. LEXIS 98189, at *30 (M.D. La May 25, 2021). Commonality is satisfied "where a question of law linking class members is substantially related to the resolution of the litigation." *Hays v. Eaton Grp Attorneys, LLC*, 2019 U.S. Dist. LEXIS 17029, at *12 (M.D. La. Feb. 4, 2019). While the requirement may require common injurious conduct—here, failure to pay ACV Sales Tax and Transfer Fees—it does not require common damages. *In re Deepwater Horizon*, 739 F.3d at 811.

Plaintiff submits that commonality is satisfied here because whether Allstate breached the form Policies by failing to pay cost necessary to replace a total-loss vehicle, and thus failed to properly pay ACV, is a common question of law, for which interpretation of uniform Policy language would provide a common answer. *See, e.g.*, *Allapattah v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (finding commonality established where the court interpreted materially similar contracts); *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F.Supp.2d 891, 927–28 (E.D. La 2012) (concluding claims arising from standardized contracts satisfy commonality requirement because "the contracts at issue are functionally identical"). Rule 23(a)(2) is satisfied here.

### iii. Plaintiff's claim is typical of Settlement Class Members.

Rule 23(a)(3) requires "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The threshold for showing typicality is not demanding, and it

focuses on the general similarity of the legal and remedial theories behind plaintiffs' claims. *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997). Thus, "many courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." 7A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1764 (2014).

Allstate's practices described herein are allegedly uniform and Plaintiff's claims are based on the same legal theory—her identical insurance contracts with Allstate were materially breached because ACV includes costs reasonably likely to be incurred. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). Plaintiff's claims are also subject to the same affirmative defenses as absent Class Members. But, Plaintiff submits, even the presence of a unique defense or factual circumstance does not preclude a finding of typicality unless it is likely to overwhelm the litigation. *See Plaza 22, LLC v. Waste Mgmt. of La., LLC*, 2015 U.S. Dist. LEXIS 30405 *14 (M.D. La. Mar. 12, 2015) (quotations omitted) (a key inquiry to the typicality analysis is whether the class representative or other plaintiffs would be "dominated by individual evidence"). Typicality is satisfied here.

### iv.    The named Plaintiff is an adequate representative.

Rule 23(a) requires that class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The purpose of this requirement is to ensure the plaintiffs "suffer the same injury" as class members and identify whether they have interests antagonistic to the class. *See In re Deepwater Horizon*, 785 F.3d at 1015.

Plaintiff is committed to protecting the interests of the Class, as seen by her prosecution of the claim through the counsel she retained and her engagement in the discovery process, as well as the favorable terms she secured on behalf of Settlement Class Members. ECF No. 64-2 "Second

Scwartzbaum Declaration" ¶¶ 26-27; *see Doiron v. Conseco Health Ins. Co.*, 240 F.R.D. 247, 253 (M.D. La. 2007) (finding the hiring of "qualified" class counsel that provide "diligent and competent representation" as they participle in the litigation is evidence of adequacy), *vacated on other grounds*, 2008 U.S. App. LEXIS 11376 (5th Cir. La., May 28, 2008). There is no suggestion that any conflict of interest exists nor any threat this litigation could benefit some Settlement Class Members while harming others. *See generally Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (a conflict precluding adequacy occurs only if it is "fundamental," meaning that some class members would be "harmed by the same conduct that benefitted other[s]").

Further, Plaintiff's counsel is experienced in litigating class actions and complex litigation, have successfully litigated class actions asserting the same claims as presented here, and have the resources necessary to prosecute the claim. Second Scwartzbaum Decl. ¶¶ 22, 28; *see* Fed. R. Civ. P. 23(g) (listing factors relevant to appointing class counsel); *Mays v. Nat. Bank of Com.*, 1998 U.S. Dist. LEXIS 20698, at *22–23 (N.D. Miss. Nov. 19, 1998) (counsel's adequacy shown by their "substantial experience with class litigations as well as familiarity with particular issues in the case"); *Carmen v. R.A. Rogers, Inc.*, 2018 U.S. Dist. LEXIS 174461, at *10–11 (W.D. Tex. Apr. 25, 2018) (concluding counsel's adequacy demonstrated by ability to devote resources to the litigation). The adequacy requirement is thus met.

**B. The Putative Class Should be Certified Pursuant to Fed. R. Civ. P. 23(b)(3).**

**i. Common questions of law and Fact predominate over any questions affecting only individual Settlement Class Members.**

To satisfy predominance, "common issues must constitute a significant part of the individual cases." *Mullen*, 186 F.3d at 626. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Unger v. Amedisys*

*Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 622–23 (1997)). The inquiry should focus on "how resolution of an allegedly common question of law or fact will decide an issue central to an element or defense of each of the class members' claims at once." *In re Pool Prods. Distrib.*, 310 F.R.D. at 311. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, Plaintiff contends the predominance prong is easily satisfied. Indeed, courts routinely find common issues predominate in cases involving interpretation of uniform insurance policies. *See, e.g.*, *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 710 (5th Cir. 2020); *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 375 (8th Cir. 2018); *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 459-60 (6th Cir. 2020). The allegedly predominating issue in this litigation is whether Allstate's policies include coverage for Sales Tax and Transfer Fees as components of ACV due after a total loss, and this identical policy language governs every Settlement Class Member. Plaintiff contends the uniform policy to not include regulatory fees in ACV payments breached the Policy for *every* Class Member in precisely the same way. *See* Compl. ¶¶ 72-74, 81-83. Not only does the answer to this question depend on form policy language equally applicable to all Settlement Class Members, but it is also a legal question of contract interpretation devoid of factual inquiry that might generate individual issues. *See Snelling & Snelling, Inc. v. Fed. Ins. Co.*, 205 F. App'x 199, 201 (5th Cir. 2006).

### ii.    This Class Action is the Superior Method of Adjudication.

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting

his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem*, 521 U.S. at 617. Plaintiff submits the Supreme Court's reasoning in *Amchem* is applicable here, since the amount at stake for any plaintiff individually would make a lawsuit uneconomical. Certifying this action as a class action for settlement purposes will allow final resolution of many claims through an efficient mechanism.

### C.  The Settlement Favors Approval

The Agreement removes the risk that the Class will recover nothing due to an unfavorable ruling on class certification, summary judgment, or any appeal therefrom. The Agreement provides, to those Settlement Class Members who submit a valid claim, 100% of the total damages that could have been recovered at trial. Schwartzbaum Decl. ¶ 29; Agreement ¶ 66-68. For all these reasons, Plaintiff believes the Agreement is fair and reasonable to the Class and this Court should enter a final order approving it as such.

<u>**CONCLUSION**</u>

Plaintiff respectfully requests that the Court grant final approval of the proposed Agreement and enter an order that includes the content of the proposed order attached as Exhibit 2 hereto, which the Parties agreed upon as part of the settlement documentation in this matter and previously submitted to the Court in draft form.

Respectfully submitted this 16th day of January 2025.

*/s/ Soren E. Gisleson*
Soren E. Gisleson, La. Bar No. 26302
**HERMAN KATZ GISLESON & CAIN, LLC**
909 Poydras St., Ste. 1860
New Orleans, LA 70112
Tel: (504) 581-4892

Fax: (504) 561-6024
sgisleson@hhklawfirm.com

Edmund A. Normand*
Florida Bar No.: 865590
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407-603-6031
E-Mail: ed@normandpllc.com
E-Mail: ean@normandpllc.com

Adam A. Schwartzbaum*
Florida Bar No.: 093014
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Tel: 305-725-1245
E-Mail: adam@edelsberglaw.com

Andrew Shamis, Esq.*
Florida Bar No.: 101754
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299
E-mail: ashamis@shamisgentile.com

*Attorneys for Plaintiff*

*\*admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2025, I electronically filed a true and exact copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Soren E. Gisleson*
Attorney for Plaintiff